IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FERRIS MFG. CORP. and SESSIONS PHARMACEUTICALS INC., | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:17-cv-1024 |
| THAI CARE CO. LTD., RHS HEALTHCARE SOLUTIONS INC. a/k/a RELIABLE HEALTHCARE SOLUTIONS INC. a/k/a RHS HEALTHCARE INC., SANTO GIGLIA, K. CARLTON INTERNATIONAL INC. d/b/a KCI SHIPPING LINE, JOSE MARTINEZ, BRB INVESTORS, INC., and BRIAN BAILEY, | § § § § § § § § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT, JURY DEMAND, AND APPLICATION FOR INJUNCTIVE RELIEF

Plaintiffs Ferris Mfg. Corp. ("Ferris Mfg.") and Sessions Pharmaceuticals Inc.

("Sessions," collectively with Ferris Mfg., "Ferris"), allege as follows against Defendants Thai

Care Co. Ltd. ("Thai Care"), RHS Healthcare Solutions Inc. a/k/a Reliable Healthcare Solutions

Inc. a/k/a RHS Healthcare Inc. ("Reliable"), Santo Giglia ("Giglia"), K. Carlton International

Inc. d/b/a KCI Shipping Line ("KCI"), Jose Martinez ("Martinez"), Brb Investors, Inc. ("BRB"),

and Brian Bailey ("Bailey") (collectively, "Defendants"), upon actual knowledge with respect to

itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.      This is a civil action for direct and contributory trademark infringement,

gray market infringement, passing off, false designation of origin, and related violations under

the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and common law breach of contract, tortious interference, conversion, unfair competition, misappropriation, fraud, and conspiracy.

2.      Ferris is a Fort Worth based company that has been creating and manufacturing medical wound-care products since approximately 1977. Sessions owns the federally registered trademark PolyMem® and has licensed the PolyMem® trademark to Ferris Mfg. Ferris engages various medical supply distributors to distribute its PolyMem® wound care products in specific regions in the United States and abroad.

3.      Thai Care distributes medical products throughout Southeast Asia and entered into an agreement with Ferris to be Ferris's exclusive distributor of PolyMem® Wound Care Dressings in Thailand, Laos, Cambodia, and Myanmar.

4.      Despite this agreement, Thai Care conspired with KCI, a shipping company, and Reliable, a United States distributor of medical products, in a multi-million dollar scheme to wrongfully divert Ferris's Thailand-bound PolyMem® Wound Care Dressings to Reliable for unlawful and infringing distribution in the United States.

5.      To carry out their fraudulent scheme and conspiracy, Defendants provided false and inaccurate shipping documents, order forms, and other materials, including emails, to Ferris, which stated that the PolyMem® Wound Care Dressings were being exported to Thailand following pickup at Ferris's Fort Worth warehouse. Instead of exporting to Thailand, however, Defendants knowingly diverted these products to Reliable's warehouse in the United States.

6.      After Thai Care, KCI, and Reliable fraudulently diverted the PolyMem® Wound Care Dressings to Reliable, Reliable made further wrongful acts to sell the products on the "gray market." Reliable wrongfully used Ferris's PolyMem® trademark on its website and falsely and confusingly stated and implied that Reliable was an authorized distributor of PolyMem® Wound

Care Dressings, and Reliable physically altered and defaced the PolyMem® packaging to remove language and stickers that stated that these PolyMem® Wound Care Dressings were distributed for use in Thailand.

## THE PARTIES

7.       Ferris Mfg. is a Delaware corporation with its principal place of business at 5133 Northeast Parkway, Fort Worth, Texas 76106, and is a wholly owned subsidiary of Sessions.

8.       Sessions (formerly "Ferris Pharmaceuticals Inc.") is a Delaware corporation with its principal place of business at 5133 Northeast Parkway, Fort Worth, Texas 76106.

9.       Upon information and belief, Thai Care is a foreign corporation with its principal place of business at 296 KSP Building Fl. 4, Room 4B, Rama IX Road, Huay Kwang, Bangkok, Thailand 10310.

10.      Upon information and belief, Reliable is a Florida corporation with its principal place of business at 240 Billiou St., Staten Island, New York 10312 and maintains its warehouse in Jacksonville, Florida.  However, on information and belief, and despite this principal place of business, Reliable is not registered to do business in New York State.

11.      Upon information and belief, Giglia is an individual who resides at 240 Billiou St., Staten Island, New York 10312.

12.      Upon information and belief, KCI is a Florida corporation with its principal place of business at 2962 SW 26th Terrace, Suite 111, Dania Beach, Florida 33312.

13.      Upon information and belief, Martinez is an individual who resides in Florida.

14.      Upon information and belief, BRB is a New York corporation with its principal place of business at 8820 79th Avenue, Glendale, New York 11385.

15.      Upon information and belief, Bailey is an individual who resides at 8820 79th Avenue, Glendale, New York 11385.

## JURISDICTION AND VENUE

16.      This Court has jurisdiction over the subject matter of this action pursuant to

15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338 (a) and (b), and 28 U.S.C § 1332.  The Court has

supplemental jurisdiction over Ferris's state law claims pursuant to 28 U.S.C. § 1367(a) because

these state law claims are substantially related to Ferris's federal claims and arise out of the same

case or controversy.

17.      Thai Care has consented to the exercise of jurisdiction by this Court and to venue

in this Court pursuant to the distribution agreement by and between Thai Care and Ferris, dated

August 18, 2010, and the amendments thereto (the "International Distribution Agreement").

18.      Defendants Reliable, Giglia, KCI, Martinez, BRB, and Bailey have knowingly

and intentionally directed their tortious activity at this District.

19.      Moreover, upon information and belief, Reliable and KCI regularly conduct

business in Texas and are essentially at home in Texas.

20.      Venue lies in this District pursuant to 28 U.S.C. § 1391 because a substantial part

of the events giving rise to Ferris's claims have occurred and are continuing to occur in this

District.

## FACTS RELEVANT TO THE CLAIMS FOR RELIEF

### International Distribution Agreement

21.      Ferris has been developing innovative medical products since approximately

1977, and is a privately-owned producer and distributor of PolyMem® Wound Care Dressings.

22.      Among other federal trademark registrations, Sessions owns federal trademark

registration no. 1,711,093 for the mark POLYMEM, covering foam bandages and wound

dressings used on exposed or open wounds including but not limited to surgical applications,

with a date of first use of April 2, 1990.  A copy of this registration certificate is attached hereto

as Exhibit A.  Sessions has licensed the PolyMem® trademark to Ferris Mfg.

23.     PolyMem® is a unique patented wound dressing that cleanses, fills, absorbs, and

moistens wounds throughout the healing continuum.

24.     Ferris markets PolyMem® through polymem.com and additional channels, and

distributes PolyMem® Wound Care Dressings in approximately 65 countries.

25.     Ferris enters into distribution agreements with various medical suppliers within

the United States and abroad.

26.     Thai Care represented itself to Ferris as a distributor of medical supplies in

Southeast Asia.

27.     In 2010, Ferris entered into the International Distribution Agreement with Thai

Care.

28.     Pursuant to the International Distribution Agreement, Thai Care agreed to be the

exclusive distributor of PolyMem® in Thailand, Laos, Cambodia, and Myanmar.

29.     Thai Care agreed to meet certain sales quotas, and Ferris agreed to provide Thai

Care with PolyMem® for distribution in Thailand, Laos, Cambodia, and Myanmar.

30.     Ferris sold PolyMem® Wound Care Dressings to Thai Care, for distribution only

in Thailand, Laos, Cambodia, and Myanmar, at a price substantially less than the cost of

PolyMem® products manufactured for distribution within the United States.

31.     PolyMem® products manufactured for distribution in Thailand, Laos, Cambodia,

and Myanmar also shipped in packaging different from PolyMem® products manufactured for

distribution in the United States.  PolyMem® packaging manufactured for Thai Care carried a

label reading "Distributed for use in Thailand by Thai Care Co., LTD Thailand."

32.     Ferris terminated the International Distribution Agreement earlier in 2017 after it learned that Thai Care and the other Defendants engaged in a fraudulent scheme to sell the PolyMem® products intended for sale in Thailand, Laos, Cambodia, and Myanmar through Reliable's distribution channels within the United States.

**Defendants' Fraudulent Gray Market Scheme**

33.     During the term of the International Distribution Agreement, Thai Care submitted numerous purchase orders to Ferris for PolyMem® products pursuant to the International Distribution Agreement.

34.     During the life of the International Distribution Agreement Thai Care submitted purchase orders for PolyMem® products totaling in excess of $2.39 million.

35.     Each purchase order from Thai Care indicated that the order was intended for distribution in Thailand, Laos, Cambodia, and Myanmar.

36.     Ferris fulfilled each purchase order submitted by Thai Care.

37.     For example, on June 24, 2013, June 4, 2014, March 2, 2015, April 20, 2015, and September 29, 2016, Thai Care knowingly submitted false purchase orders to Ferris indicating that the PolyMem® products being purchased were to be distributed by Thai Care in Thailand, Laos, Cambodia, and Myanmar.

38.     Ferris relied on Thai Care's representation that the purchased products would be distributed in Thailand, Laos, Cambodia, and Myanmar.  Ferris would not have sold PolyMem® products to Thai Care for distribution in the United States.

39.     Thai Care was responsible for arranging for shipping of the PolyMem® products from Ferris's warehouse to Thai Care's purported distribution center in Thailand.

40.     The purchase orders each listed Jose Martinez of KCI as the contact for overseeing the shipping of the PolyMem® products from Ferris's warehouse to Thai Care.

41.     The purchase orders from Thai Care were often accompanied by emails from Thai Care personnel that also indicated that the PolyMem® products being ordered were intended for distribution in Thailand, Laos, Cambodia, and Myanmar.

42.     KCI and its predecessor Geo-Logistics worked in concert with Thai Care to arrange for the pickup of PolyMem® products from Ferris's warehouse in Fort Worth.

43.     Upon information and belief, Mr. Martinez oversaw shipping on behalf of KCI and its predecessor Geo-Logistics.

44.     In furtherance of the fraudulent scheme, KCI knowingly presented Ferris with false bills of lading that indicated that the PolyMem® products purchased by Thai Care would be delivered to Thailand.  For example, Ferris was presented with false letters of instruction on June 25, 2013, June 10, 2014, and in March 2015.

45.     Additionally, during conversations with Ferris personnel, Mr. Martinez indicated that Thai Care had engaged KCI to arrange for the shipment of PolyMem® products to Thailand.

46.     KCI, acting in concert with Thai Care and Reliable, engaged third-party shippers to unlawfully and fraudulently divert the shipments to Reliable's warehouse in Jacksonville, Florida – rather than shipping the PolyMem® products to Thailand from KCI's Florida warehouse.

47.     Reliable markets itself as a legitimate medical product distributor, but it is engaged in the sale of gray market medical products throughout the United States.

48.     Upon information and belief, Thai Care and Reliable have conspired to and continue to carry out similar gray market schemes to divert the purportedly Thailand-bound products of other U.S.-based medical product manufacturers to Reliable.

49.     The sale of unlawful gray market products in the United States is not only a violation of the Lanham Act and other laws, but such sales can often cause serious medical issues as end users are being sold products that were not intended for sale in the United States.

50.     In order to conceal the Defendants' fraudulent activity, Reliable altered the PolyMem® packaging by removing the labeling indicated that these PolyMem® products were manufactured and distributed for sale within Thailand only.

51.     The PolyMem® product that is lawfully sold in the United States also differs from the PolyMem® product intended for sale in Thailand, including because the Thailand product unlawfully sold in the United States is not covered by the warranty protection that applies to the product lawfully sold in the United States.

52.     Additionally, Reliable added Ferris's federally-registered PolyMem® trademark to its own website to create the false and misleading impression that Reliable was an authorized U.S. distributor of PolyMem® products.

53.     Reliable then sold the PolyMem® products it received from Thai Care and KCI to unsuspecting healthcare providers throughout the United States.

54.     Upon information and belief, Reliable is the alter ego of its President and owner Mr. Giglia, who operates Reliable as a gray market medical supply distributor.

55.     Upon information and belief, Mr. Giglia operates Reliable out of his home in Staten Island, New York, although Reliable is not registered to do business in New York.

56.     Upon information and belief, in furtherance of the scheme, Reliable was aided and abetted by BRB, who knowingly purchased gray market PolyMem® products from Reliable and then distributed those gray market PolyMem® products in the United States.

57.     Upon information and belief, BRB is the alter ego of its President and owner Mr. Bailey, who operates BRB as a gray market medical supply distributor.

58.     As a result of this fraudulent gray market sales scheme, conspiracy, and other violations alleged herein, Ferris was not only injured by the sale of infringing products in the United States and the improper use of its PolyMem® mark, but was also injured in other ways as well, for example, because its PolyMem® products were not sold in Thailand, Laos, Cambodia, and Myanmar as required by the International Distribution Agreement. Thus, Ferris's marketing position and brand equity suffered in those four countries as a direct result.

## CLAIMS FOR RELIEF

### First Claim for Relief: Violations of
### Section 32 and Section 43 of the Lanham Act by Reliable, Giglia, BRB, and Bailey

59.     Ferris repeats the allegations contained in paragraphs 1 through 58 above.

60.     As detailed above, without Ferris's consent, Reliable, Giglia, BRB, and Bailey engaged in the sale, offering for sale, distribution, and/or advertising of Ferris's foreign designated goods in the United States in violation of the Lanham Act.

61.     As detailed above, the PolyMem® products obtained and distributed in the United States by Reliable, Giglia, BRB, and Bailey were sold by Ferris exclusively for distribution in Thailand, Laos, Cambodia, and Myanmar. These PolyMem® products intended for sale in Thailand, Laos, Cambodia, and Myanmar were materially different than the products intended for sale in the United States, because, for example, the former products were priced materially lower than the PolyMem® products intended for distribution in the United States; were sold in

packaging different than PolyMem® products intended for sale in the United States; and were not covered by the warranty that would apply to the products lawfully sold in the United States.

62.     Reliable, Giglia, BRB, and Bailey's actions are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Ferris's PolyMem® products with these Defendants, and as to the origin, sponsorship, or approval of these Defendants' goods, services, or commercial activities by Ferris.

63.     By reason of the foregoing, Ferris has suffered, and will continue to suffer, substantial injury.

**Second Claim for Relief: Violations of**
**Section 32 and Section 43 of the Lanham Act by Reliable and Giglia**

64.     Ferris repeats the allegations contained in paragraphs 1 through 63 above.

65.     As detailed above, Reliable and Giglia's actions are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Ferris's PolyMem® products with Reliable and Giglia, and as to the origin, sponsorship, or approval of Reliable and Giglia's goods, services, or commercial activities by Ferris.

66.     As detailed above, Reliable and Giglia's actions in commercial advertising and promotion misrepresent the nature, characteristics, and qualities of Reliable and Giglia's goods, services, and commercial activities.

67.     As detailed above, Reliable and Giglia have misappropriated Ferris's PolyMem® mark and the associated goodwill that were created at Ferris's expense and through Ferris's skill and labor.

68.     By reason of the foregoing, Ferris has suffered, and will continue to suffer, substantial injury.

## Third Claim for Relief: Contributory Trademark
## Infringement by Thai Care, KCI, and Martinez

69.     Ferris repeats the allegations contained in paragraphs 1 through 68 above.

70.     Thai Care, KCI, and Martinez, with intent to induce Reliable, Giglia, BRB, and/or

Bailey to infringe Ferris's rights in the PolyMem® mark, and/or with knowledge that Reliable,

Giglia, BRB, and/or Bailey were infringing Ferris's rights, provided Reliable, Giglia, BRB,

and/or Bailey with the PolyMem® products that constitute and underlie Reliable, Giglia, BRB,

and/or Bailey's infringing conduct.

71.     By reason of the foregoing, Ferris has suffered, and will continue to suffer,

substantial injury.

## Fourth Claim for Relief: Breach of Contract Against Thai Care

72.     Ferris repeats the allegations contained in paragraphs 1 through 71 above.

73.     The International Distribution Agreement is a valid and enforceable contract

between Ferris and Thai Care whereby, amongst other things, Thai Care was to act as exclusive

distributor of PolyMem® products in Thailand, Cambodia, Myanmar, and Laos and was

obligated to meet certain minimums for the distribution of PolyMem® products in that territory.

74.     Ferris fully performed each of its contractual obligations under the International

Distribution Agreement.

75.     By failing to distribute PolyMem® products in Thailand, Cambodia, Myanmar,

and Laos and instead diverting those products for sale in the United States, Thai Care breached

the International Distribution Agreement.

76.     Further, through the acts and omissions described above Thai Care, by itself and

through its agents, breached the International Distribution Agreement, including, for example, by

changing or modifying the PolyMem® product packaging.

77.     As a direct and proximate result of Thai Care's breaches, Thai Care has gained a financial benefit for itself and has caused financial loss and damages to Ferris.

78.     Because of Thai Care's conduct described herein, Ferris had to retain the services of the undersigned attorneys.  Ferris has incurred and continues to incur reasonable and necessary attorneys' fees.  Pursuant to Section 11.5 of the International Distribution Agreement, Ferris is entitled to recover its reasonable attorneys' fees incurred in the event Ferris prevails in any litigation with respect to the International Distribution Agreement.  Pursuant to Texas Civil Practice and Remedies Code Chapter 38.001, *et. seq.*, Ferris may recover reasonable and necessary attorneys' fees.

### Fifth Claim for Relief: Fraud Against Thai Care, KCI, and Martinez

79.     Ferris repeats the allegations contained in paragraphs 1 through 78 above.

80.     As described above, Thai Care, KCI, and Martinez knowingly made false statements to Ferris with the intent of inducing Ferris to rely on those statements, including that the PolyMem® products purchased by Thai Care would be shipped to Thailand by KCI and distributed and sold in Thailand, Cambodia, Myanmar, and Laos.

81.     Ferris relied on those false statements in providing its PolyMem® products to Thai Care, KCI, and Martinez.

82.     By reason of the foregoing, Ferris has suffered, and will continue to suffer, substantial injury.

83.     Ferris is further entitled to exemplary damages as a result of Thai Care, KCI, and Martinez's fraud.  *See* Tex. Civ. Prac. Rem. Code § 41.003(a)(1).

### Sixth Claim for Relief: Tortious Interference With Contract Against KCI, Martinez, Reliable, and Giglia

84.     Ferris repeats the allegations contained in paragraphs 1 through 83 above.

85.     Ferris had a valid and enforceable agreement with Thai Care.

86.     Upon information and belief, KCI, Martinez, Reliable, and Giglia had knowledge of Ferris's International Distribution Agreement with Thai Care through their interactions with Thai Care and/or KCI, or, at minimum, they had knowledge of facts and circumstances that would lead a reasonable person to believe that Thai Care had entered into a contract in which Ferris had an interest.

87.     KCI, Martinez, Reliable, and Giglia willfully and intentionally interfered with the International Distribution Agreement by diverting PolyMem® product shipments to within the United States rather than Thailand and by selling PolyMem® products intended for sale in Thailand, Cambodia, Myanmar, and Laos within the United States.  KCI, Martinez, Reliable, and Giglia aided and abetted Thai Care to procure the breach of the International Distribution Agreement.

88.     By its tortious interference of the International Distribution Agreement, KCI, Martinez, Reliable, and Giglia have gained a financial benefit for themselves and have caused financial loss and damages to Ferris.

89.     Upon information and belief, KCI, Martinez, Reliable, and Giglia acted with either malice or gross negligence when they caused Ferris's damages.  Accordingly, Ferris is entitled to recover exemplary damages for KCI, Martinez, Reliable, and Giglia's tortious interference with the International Distribution Agreement.

### Seventh Claim for Relief: Conversion Against All Defendants

90.     Ferris repeats the allegations contained in paragraphs 1 through 89 above.

91.     At all relevant times, Ferris owned and had the right to possess and direct the sale of its PolyMem® products for distribution as Ferris saw fit.

92.     Defendants, by engaging in the conduct described above, have intentionally inferred with Ferris's use and control of its PolyMem® products, by distributing those products through unauthorized channels.

93.     By converting those products for Defendants' benefit, Defendants have gained a financial benefit for themselves and have caused financial loss and damages to Ferris.

### Eighth Claim for Relief: Unfair Competition/Misappropriation
### Against Reliable and Giglia

94.     Ferris repeats the allegations contained in paragraphs 1 through 93 above.

95.     Ferris developed its PolyMem® trademark and products through extensive time, skill, labor, money, and other resources.  In connection with the advertisement, marketing, and sale of its products, Reliable and Giglia have willfully and intentionally exploited the reputation and goodwill associated with Ferris's PolyMem® trademark and products in competition with Ferris to gain a competitive advantage, and also in a manner that was likely to cause confusion, mistake, and to deceive.  For example, Reliable and Giglia gained a particular advantage because they were not burdened with the expenses incurred by Ferris in developing the goodwill, reputation, and works of Ferris.  By these actions, Reliable and Giglia have gained a financial benefit for themselves and have caused financial loss and damages to Ferris.

96.     Such actions by Reliable and Giglia have caused and will continue to cause Ferris irreparable injury for which Ferris has no adequate remedy at law.

### Ninth Claim for Relief: Common Law Conspiracy
### Against All Defendants

97.     Ferris repeats the allegations contained in paragraphs 1 through 96 above.

98.     Ferris is entitled to relief under Texas common law against Defendants for their conspiracy to wrongfully harm Ferris.

99.     One or more Defendants committed the torts described above, including fraud, tortious interference with contract, and common law misappropriation.

100.    One or more Defendants have acted in collusion to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

101.    Defendants formed a combination of two or more persons.

102.    On information and belief, Defendants intentionally set out to wrongfully and unlawfully divert Ferris's Thailand-bound PolyMem® Wound Care Dressings to Reliable for distribution in the United States for the purpose of obtaining an unfair competitive advantage, for pecuniary benefit, and to steal and divert Ferris's Thailand-bound PolyMem® Wound Care Dressings sales.

103.    Defendants have associated together through a meeting of their minds and for a common purpose of engaging in a course of conduct, and as an ongoing and continuing organization or unit, to conduct the unlawful and tortious activities described in this Complaint.

104.    Defendants committed multiple unlawful and overt acts in furtherance of the conspiracy.  For example, Thai Care submitted fraudulent order forms to Ferris; Thai Care, KCI, and Martinez engaged in a fraudulent shipping scheme by which they misrepresented to Ferris the intended destination of the PolyMem® shipments; all Defendants engaged in conversion as they wrongfully usurped Ferris's ownership of the PolyMem® products and diverted those products to unauthorized sales channels; KCI, Martinez, Reliable, and Giglia knowingly and tortiously interfered with the International Distribution Agreement, which was breached by Thai Care; Reliable, Giglia, BRB, and Bailey infringed Ferris's registered PolyMem® mark by selling in the United States the Thailand-bound PolyMem® products that are materially different than United States-bound products, and by using Ferris's PolyMem® mark to create the false

impression of an association between PolyMem® products, and in a manner that was likely to cause confusion, mistake, and to deceive.

105.    Defendants' conspiracy proximately caused damages to Ferris.  Ferris is entitled to all damages caused by this conspiracy as well as exemplary damages.

106.    Defendants will continue their conspiracy, which will irreparably injure Ferris, unless this Court enjoins Defendants' improper activities.  Ferris, therefore, is also entitled to a permanent injunction to prevent this conspiracy in the future.

**CONDITIONS PRECEDENT**

107.    All conditions precedent to Ferris's recovery have been performed or have otherwise occurred.

**PRAYER FOR RELIEF**

**WHEREFORE**, Ferris respectfully requests that this Court enter judgment in their favor and against Defendants, as follows:

(A)    Issue injunctive relief enjoining Defendants and their officers, directors, agents, employees, successors, assigns and attorneys, and all other persons or entities in active concert or participation with Defendants who receive notice of the injunction by personal service or otherwise, from, directly or indirectly, doing, aiding, causing, or abetting the following:

(i)    engaging in any further use of marks that are identical or confusingly similar to the PolyMem® mark;

(ii)    using in commerce an identical or confusingly similar imitation of the PolyMem® mark in connection with the sale, offering for sale,

distribution, promotion, or advertisement of any goods and/or services
without authorization from Ferris;

    (iii)    selling, distributing, or transporting within the United States any
PolyMem® products that are intended for sale outside the United States,
and thus misrepresenting the nature, characteristics, qualities, and/or
geographic origin of Ferris's products and services; or

    (iv)    otherwise engaging in competition unfairly;

(B)    Order Defendants to file with the Court and serve upon counsel for Ferris, within
thirty (30) days after the entry of the permanent injunction requested in this
Complaint, a written report, sworn to under oath, setting forth in detail the manner
and form in which Defendants have complied with the injunction;

(C)    Order Defendants to account for and pay to Ferris all profits derived by reason of
Defendants' acts alleged in this Complaint pursuant to 15 U.S.C. § 1117(a),
common law, and any other applicable law;

(D)    Order Defendants to pay Ferris all actual damages it has sustained as a result of
Defendants' actions which exceed $2.39 million, including, without limitation,
breach of contract damages and damage to Ferris's business, reputation, and
goodwill, and the loss of sales and profits that it would have made but for
Defendants' acts, pursuant to 15 U.S.C. § 1117(a) and any other applicable law;

(E)    Find that this is an "exceptional" case pursuant to 15 U.S.C. § 1117(a);

(F)    Award Ferris treble damages pursuant to 15 U.S.C. § 1117(b);

(G)    Award Ferris its costs of suit, including reasonable and necessary attorneys' fees
and expenses for the prosecution and appeal, if any, of this matter pursuant to

15 U.S.C. § 1117(a), Section 11.5 of the International Distribution Agreement, Tex. Civ. Prac. & Rem. Code § 38.001, *et. seq.*, or otherwise permitted by law;

(H)     Order Defendants to destroy any goods or marketing materials bearing Ferris's PolyMem® mark in any of their possession or under any of their control;

(I)     Order Defendants to engage in corrective advertising, at their expense, at a scope commensurate with their advertising and promotion of the infringing mark and distribution of the offending products;

(J)     Award Ferris exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a)(1) and as permitted by law;

(K)     Award Ferris punitive damages;

(L)     Award Ferris pre-judgment and post-judgment interest on all sums awarded in the Court's judgment; and

(M)     Grant Ferris such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Ferris hereby demands a trial by jury on all claims and issues triable by a jury.

Dated:   December 22, 2017

Respectfully submitted,

*/s/ Karen C. Denney*
Karen C. Denney
State Bar No. 24036395
karen.denney@haynesboone.com
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, Texas 76102
Telephone: 817-347-6600
Telecopier: 817-348-2327

Jamee M. Cotton
State Bar No. 24087349
jamee.cotton@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone:  214-651-5000
Telecopier:  214-200-0865

Adam Siegartel*
New York State Bar No. 4089223
adam.siegartel@haynesboone.com
Richard D. Rochford*
New York State Bar No. 1755016
richard.rochford@haynesboone.com
Joseph Lawlor*
New York State Bar No. 5087614
joseph.lawlor@haynesboone.com

*\*Pro hac vice applications forthcoming*

HAYNES AND BOONE, LLP
30 Rockefeller Plaza, Floor 26
New York, New York 10112
Telephone: 212-659-7300
Telecopier: 212-884-9572

**ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT A

Int. Cl.: 5

Prior U.S. Cl.: 18

**United States Patent and Trademark Office**

Reg. No. 1,711,093
Registered Sep. 1, 1992

## TRADEMARK
### PRINCIPAL REGISTER

## POLYMEM

FERRIS CORP. (ILLINOIS CORPORATION)
16 W. 300 83RD STREET
BURR RIDGE, IL 60521 , ASSIGNEE OF FERRIS
  MANUFACTURING CORPORATION (DELA-
  WARE CORPORATION) BURR RIDGE, IL
  60521

FOR: FOAM BANDAGES AND WOUND
DRESSINGS USED ON EXPOSED OR OPEN
WOUNDS INCLUDING BUT NOT LIMITED TO

SURGICAL APPLICATIONS, IN CLASS 5 (U.S.
CL. 18).

FIRST USE 4–2–1990; IN COMMERCE
11–12–1990.

SER. NO. 74–151,780, FILED 3–27–1991.

SCOTT GOODPASTER, EXAMINING ATTOR-
NEY