IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FERRIS MANUFACTURING, and SESSIONS PHARMACEUTICALS, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:17-cv-01024-O |
| THAI CARE, CO. LTD., et al., | § § § § § § | |
| Defendants. | § | |

# ORDER

The United States Magistrate Judge made Findings, Conclusions, and a Recommendation (the "FCR") in this case. May 23, 2019 FCR, ECF No. 222. The FCR recommended that this Court deny Reliable's Partial Motion for Partial Summary Judgment and grant in part and deny in part the KCI Defendants' Motion for Summary Judgment. Reliable filed objections to the FCR (ECF No. 240) on June 6, 2019, and Plaintiffs filed objections to the FCR (ECF No. 242) on June 7, 2019.

The Court conducts a *de novo* review of the portions of the FCR to which a party objects. Anything that Plaintiffs or Defendants did not specifically object to is reviewed for plain error. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference, or refers to, the briefing before the Magistrate Judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and

1

legal conclusions of the Magistrate Judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996).

For the following reasons, the Court modifies the FCR (ECF No 222), and Reliable's Partial Motion for Summary Judgment (ECF No. 154) is hereby **GRANTED in part and DENIED in part.**

## I. BACKGROUND

### A. Procedural Background

Plaintiffs Ferris Mfg. Corp and Sessions Pharmaceuticals Inc. ("Plaintiffs") bring this suit against Defendants Thai Care Co. Ltd. ("Thai Care"), Reliable Healthcare Solutions Inc. a/ka RHS Healthcare Inc. ("Reliable"), Santo Giglia ("Giglia" together with Reliable, "RHS Defendants"), K. Carlton International Inc. d/b/a KCI Shipping Line ("KCI"), and Jose Martinez ("Martinez, together with KCI, "KCI Defendants"), (collectively, "Defendants") claiming violations of §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1051 et seq., tortious interference with a contract, breach of contract, fraud, conversion, unfair competition and misappropriation, and common law conspiracy. *See* Am. Compl., ECF No. 46. This Court dismissed Plaintiffs' Lanham Act claims against Giglia individually. *See* Jan. 23, 2019 Order, ECF No. 101. Reliable moved for partial summary judgment (ECF No. 154) and the KCI Defendants moved for summary judgment (ECF No. 151). The Magistrate Judge recommended that this Court deny Reliable's Motion for Partial Summary Judgment and grant in part and deny in part the KCI Defendants' Motion for Summary Judgment. May 23, 2019 FCR, ECF No. 222. Subsequently, the KCI Defendants filed a notice of settlement and are expected to file the appropriate dismissal papers soon. *See* Not. Settlement, ECF

No. 236. Accordingly, the Court need only analyze Reliable's partial motion for summary judgment.

**B.    Factual Background**

Unless otherwise noted, the following facts are undisputed. When disputed, the facts are viewed in the light most favorable to Plaintiffs, the nonmoving party. In 1988, Sessions Pharmaceuticals Inc. ("Sessions") formulated and patented a wound care dressing named PolyMem which is used for covering numerous types of wounds. Sessions subsequently obtained the federally registered trademark "POLYMEM" on September 1, 1992 under registration no. 1,711,093. Sessions also owns other PolyMem-formative marks, all of which are licensed to Ferris Mfg. Corp ("Ferris").

Ferris is based in Fort Worth, Texas and has created and manufactured wound care products since approximately 1977. In addition to the PolyMem family of products, Ferris manufactures and sells other wound care products. All PolyMem products, which come in a variety of lines and sizes, are manufactured in Fort Worth. To distribute PolyMem throughout the United States and abroad, Ferris engages various medical supply distributors. In 2010, Ferris entered into an exclusive international distribution agreement (the "IDA"), with a company in South East Asia called Thai Care. Pursuant to the IDA, Thai Care became Ferris' exclusive distributor of PolyMem in Thailand, Laos, Cambodia, and Myanmar (the "Territory").

In exchange for preferential pricing and the exclusive right to distribute PolyMem throughout the Territory, Thai Care was prohibited from, among others, (1) marketing any other wound care products that compete with Ferris' PolyMem; (2) selling, directly or indirectly, PolyMem outside of the Territory; and (3) changing or modifying the PolyMem product or packaging. Thai Care was, among other requirements, obligated to maintain a specific annual

dollar sales volume; to use best efforts to promote and sell PolyMem, including providing sufficient sales personnel; and to pay for overhead in performance of the IDA. The IDA was amended at least once in 2015 to update Thai Care's performance objectives, and the exclusivity provision remained.

Plaintiffs allege that Thai Care acted in concert with Reliable, a medical product retailer and distributor, and KCI Shipping, a shipping company, to sell PolyMem in the United States through Reliable's distribution channels in violation of the IDA. Sometime in June or July 2014, Ferris began labeling select PolyMem with labels that stated, "Distributed for use in Thailand by Thai Care Co., LTD Thailand" (referred to herein as the "labels"). Reliable does not dispute that it subsequently removed these labels and resold the packages in the United States. Eventually, Ferris learned that PolyMem sold to Thai Care for distribution in Southeast Asia was then being sold in the United States market, and it terminated the IDA.

## II. LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id*. at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322–23. Therefore, the moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of his case where he has the burden of proof. *Id*. at 323 (comparing the standard for granting summary judgment to the standard for a Rule 50(a) directed verdict). A mere scintilla of evidence to support a non-moving party's position is insufficient to defeat a summary judgment motion; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. ANALYSIS OF OBJECTIONS

The Court will conduct a *de novo* review of the objections to the FCR raised by Plaintiffs and Reliable. Reliable moves for partial summary judgment on Ferris' Lanham Act claims, arguing

that Reliable's sale of Thai-bound PolyMem is protected by the first sale doctrine because there are no material differences between PolyMem products manufactured for distribution in Southeast Asia and those destined for sale in the United States. Reliable's Mot. Summ. J. 15–24, ECF No. 155. Alternatively, Reliable argues if the Court were to find that Ferris' labeling of PolyMem was the only triable issue related to its material difference argument, the Court should otherwise grant summary judgment on Ferris' claims regarding all PolyMem products sold without the labels. Plaintiffs assert that a fraudulently induced first sale, such as the one alleged in this case, does not qualify for the first sale doctrine. Pls.' Resp. 53–57, ECF No. 16. Additionally, Plaintiffs contend that PolyMem intended for sale in Southeast Asia was not covered by Ferris' warranty and could not be tracked sufficiently in case of a recall; the products differed in price; and their labeling was different. *Id*. at 45–51.

In his analysis, the Magistrate Judge reasoned that "[i]n the absence of binding authority to the contrary . . . the circumstances of the sales from Ferris to Thai Care does not prevent the first sale doctrine from otherwise applying to the facts of this case." FCR 10, ECF No. 222 citing *Am. Int'l Pictures, Inc. v. Foreman*, 576 F.2d 661, 664 (5th Cir. 1978). Additionally, the Magistrate Judge found that Plaintiffs' claims that Thai-bound PolyMem is not covered by a warranty or is covered by a warranty different from domestically distributed PolyMem are not supported by summary judgment evidence. *Id*. at 15. Similarly, the Magistrate Judge explained that Plaintiffs failed to present sufficient evidence to establish that the warranties and recall procedures were materially different for PolyMem sold domestically and that sold to Thai Care. Finally, the Magistrate Judge found no evidence of a material difference between the products related to price disparity. *Id*. at 17. However, the Magistrate Judge did find a genuine issue of fact as to whether the labels create a material difference between domestic and Thai-bound PolyMem.

6

*Id*. at 19. Therefore, the Magistrate Judge recommended that Reliable's partial motion for summary judgment be denied. *Id*. at. 21.

### A. Plaintiffs' Objections

In their objections to the FCR, Plaintiffs emphasize that they agree with the recommendation that a reasonable juror could conclude that the labeling differences were material within the meaning of the Lanham Act. Pls.' Obj. 2, ECF No. 241. However, Plaintiffs argue that the fact-finder must aggregate the differences between two products and that the FCR did not include any aggregation analysis. *Id*. at 2. But even if the differences are not aggregated, Plaintiffs contend that the recall, warranty, and price differences are each material standing alone because each difference could impact the consumer's purchase obligation. *Id*. at 3. Finally, because the Magistrate Judge recommended that summary judgment on the issue of materiality be denied, Plaintiffs ultimately contend his findings on the recall, warranty, and price differences are merely dicta and not necessary to the holding. *Id*. Therefore, Plaintiffs argue they should not be precluded from introducing evidence on these issues at trial.

### B. Reliable's Objections

Reliable argues that the FCR resolves major factual issues in Reliable's favor and that this Court should modify the FCR by entering an Order granting summary judgment in part, thereby precluding Plaintiffs from introducing recall, warranty, and price differences at trial. Defs.' Obj. 2, ECF No. 240. According to Reliable, the Magistrate Judge correctly determined that (1) there is no difference in warranty and recall procedure between Thai-bound and domestic products; and (2) the price disparity between Thai-bound and domestic products did not create customer confusion or damage Ferris' goodwill with domestic customers. *Id*. at 2.

Additionally, Reliable objects to the Magistrate Judge's recommendation that "the exact timing of when Ferris began affixing labels to Thai-bound PolyMem is also a fact issue for the jury to decide." *Id*. at 3. According to Reliable, the summary judgment record is clear that Plaintiffs placed no labels prior to June 2014, and therefore this Court should enter partial summary judgment in favor of Reliable on Ferris' Lanham Act claims for all sales pre-dating June 1, 2014. *Id*.

**C.      Analysis**

        1.      <u>The First Sale Doctrine</u>

As a general rule, "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 590 (5th Cir. 1993) (citations omitted). In other words, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). This rule, typically referred to as the "exhaustion" or "first sale" doctrine, merely acknowledges that "liability under the Lanham Act is predicated on the use of a trademark in a way that is likely to cause confusion." *Matrix Essentials*, 988 F.2d at 590 (internal quotation marks omitted). Therefore, a reseller of genuine trademarked goods faces no trademark-related liability because a consumer buying genuine goods through a secondary seller "gets exactly what the consumer bargains for, the genuine product of the particular producer." *Sebastian*, 53 F.3d at 1075. The first sale doctrine does not apply, however, if the defendant is selling goods that "materially" differ from the goods the mark owner sells. *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 642

(N.D. Tex. 2009) (citing *Warner–Lambert Company v. Northside Development Corporation*, 86 F.3d 3, 6 (2nd Cir.1996)).

Here, Plaintiffs seek clarification as to whether the first sale doctrine applies and whether it will be presented to the jury. Pls.' Obj. 14, ECF No. 241. Reliable argues the Magistrate Judge correctly found the first sale doctrine applies because Ferris voluntarily put its products into the stream of commerce and received payment from Thai Care in exchange for title to its products. Defs.' Resp. Pls.' Obj., ECF No. 245.

This Court agrees with the Magistrate Judge that the first-sale doctrine may apply in this case. However, this Court finds that given the issues of material fact regarding whether the Thai-bound goods "materially" differ from the domestic goods, there is a factual issue as to whether the first sale doctrine applies. *See Mary Kay, Inc.*, 661 F. Supp. 2d at 642 (The first sale doctrine does not apply if the defendant is selling goods that "materially" differ). The Court further discusses the genuine issues of material fact below.

2. <u>Material Differences</u>

There is no mechanical way to determine the point at which a difference between trademarked goods and those sold by the alleged infringer sells becomes "material." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 641 (1st Cir. 1992). However, the "existence of any difference between the registrant's product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product creates a presumption of consumer confusion sufficient to support a Lanham Trade–Mark Act claim." *Id*. "Subtle differences" are precisely "the type that heighten the presumption of customer confusion." *Id*. But some differences between products "prove so minimal that consumers who purchase the alleged infringer's goods get precisely what they believed they were purchasing [and] consumers'

9

perceptions of the trademarked goods are not likely to be affected by the alleged infringer's sales." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072–73 (10th Cir. 2009) (citing *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 303 (3d. Cir. 1998)).

Plaintiffs object to the Magistrate Judge's particular findings as to the material differences in recall, warranty, and price differences because they argue that the law requires the fact-finder aggregate the differences between the products. Pls.'s Obj. 5, ECF No. 241. Plaintiffs emphasize that "the question for the fact-finder is *not whether any individual difference* between the products is material on its own" but rather "whether *the products* are materially different." *Id*. at 7. (emphasis in original). Therefore, Plaintiffs contend that even if the warranty, recall, and price differences do not rise to the level of materiality, that does not mean they should not be considered when evaluating whether the products are different because the fact-finder must consider and aggregate all differences. *Id*. at 8. Reliable responds that there was nothing to aggregate because the Magistrate Judge determined there was insufficient evidence proving such differences existed at all. Defs.' Resp. Pls.' Obj. 6, ECF No. 245. Reliable also argues that the Magistrate Judge properly concluded that, no differences exist between domestic and Thai-bound products in the area of recall, warranty, and price—both standing alone and in the aggregate. Defs.' Reply, 2, ECF No. 246.

In reply, Plaintiffs underscore that there is no support in the FCR that the Magistrate Judge aggregated the recall, warranty, and price differences. Pls.' Reply 2, ECF No. 247. Also, Plaintiffs re-assert that had the three differences been aggregated, the conclusion would be that the differences could be considered material—whether or not the labeling decision is also taken into consideration. *Id*.

Here, the Court first notes that Plaintiffs do not cite any Fifth Circuit case law that requires the fact-finder aggregate the differences to establish a material difference between the products. Instead, Plaintiffs rely on a First Circuit case which found "dissimilarities material in the aggregate." *Societe Des Produits Nestle, S.A.*, 982 F.2d at 644. Although there is no explicit aggregation requirement, various circuit courts, including the Fifth Circuit, discuss the "materiality" requirement in the context of materially different *products* or *goods*.[1] Thus, this Court will consider the Magistrate Judge's findings and recommendation in light of this authority.

        *a.*      *Warranty*

In their specific objections, Plaintiffs object to the Magistrate Judge's factual findings on the warranty differences. Pls.' Obj. 12, ECF No. 241. According to Plaintiffs, the Magistrate Judge improperly relied on the IDA to support the improper inference that the Thai-bound product will

---

[1] *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1094 (9th Cir. 2013) ("[A] gray-market good is 'genuine' only if it does not materially differ from the U.S. trademark owner's product."); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 246 (2d Cir. 2009) (Goods from which production codes have been physically removed are "materially different" from genuine goods.); *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009) ("We hold, as other federal circuit courts have held, that the unauthorized resale of a materially different trademarked product can constitute trademark infringement."); *Brilliance Audio, Inc. v. Haights Cross Communications, Inc.*, 474 F.3d 365, 370 (6th Cir. 2007) ("The second situation in which the first sale doctrine does not apply is 'when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner' …. We join the many circuits that have adopted a similar rule."); *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 700 (7th Cir. 2006), cert. denied, 127 S. Ct. 1330, 167 L. Ed. 2d 83 (U.S. 2007) ("[I]f the domestic and foreign products are materially different, … sale of the foreign product in the United States under the domestic marks has a potential to mislead or confuse consumers about the nature or quality of the product they are buying; they will assume it to be the same as the normal domestic product and be disappointed."); *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302–303 (3d Cir. 1998) (The test for whether an alleged infringer's products are genuine asks whether there are "material differences" between the products sold by the trademark owner and those sold by the alleged infringer.); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1301-1302 (5th Cir. 1997) (The rule that there is infringement "if the goods sold by the authorized domestic distributor and the defendant's foreign goods are materially different, is a sound one, at least when the goods in question are highly artistic, luxury goods."); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633 (1st Cir. 1992) ("[A] material difference between goods simultaneously sold in the same market under the same name creates a presumption of consumer confusion as a matter of law."); *Bose Corp. v. Ejaz*, 732 F.3d 17, 27 (1st Cir. 2013) (accord).

be covered by a "warranty." *Id*. Reliable argues that there is no warranty (1) printed outside or inside the Polymem product box, (2) included on the enclosed instructions, or (3) listed anywhere on Ferris' website. Defs.' Resp. Pls.' Obj. 6, ECF No. 245. Additionally, Reliable claims that the relied-on deposition testimony shows that Ferris' "warranty" amounts to nothing more than a best business practice to make things right for *all* its customers, both domestic and overseas. *Id*.

      Having reviewed Plaintiffs' objection, the Court finds there are no genuine issues of material fact related to whether the warranty coverage is the same for domestic and Thai-bound Polymem products. Ferris's Chief Financial Officer in his affidavit testified that "if a U.S.-based patient or healthcare provider experiences any issue with a PolyMem product before that product's expiration date, Ferris will replace that PolyMem free of charge, and patients and healthcare providers know that to be the case." Pls.'s App. Supp. Resp. Mot. Summ. J. Ex. 1 (Martin Decl.), App. 002, ECF No. 173-1. Thus, the Court agrees with the Magistrate Judge's finding that Plaintiffs' evidence does "not address whether the PolyMem sold to Thai Care and intended for export is not covered by a warranty." FCR 15, ECF No. 222. Regarding the language of the IDA, the Court finds no explicit warranty promises are made to customers in Thailand. Pls.' Obj. 12, ECF No. 241. However, this only reinforces that Plaintiffs have failed to raise an issue of material fact that there is any difference between the alleged warranty for domestic and Thai-bound PolyMem products. Therefore, this Court **OVERRULES** Plaintiffs' objection to the warranty finding and **GRANTS** Reliable summary judgment on this issue.[2]

---

[2] "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact…that is not genuinely in dispute and treating the fact as established in the case." FED. R. CIV. P. 56(g). The Court also finds that this finding would make no difference to any aggregation analysis because the lack of evidence means there was nothing to aggregate.

### b. Recall

Plaintiffs argue that the Magistrate Judge incorrectly dismissed the testimony of James Arnold and declaration of John Martin in analyzing the recall issue. Pls.' Obj. 9, ECF No. 241. Plaintiffs also underscore that they presented evidence of standard recall procedure in the industry and evidence that they have engaged in a recall in the past and that their practice is to utilize the chain of custody information to notify its distributors and the distributor's customers to recall the product. *Id*. at 10. Therefore, Plaintiffs deem the FCR inaccurate and incomplete.

Reliable argues that because Ferris has failed to establish the existence of a U.S. warranty, it cannot be said that Ferris maintains a recall procedure for PolyMem products. Defs.' Resp. Pls.' Obj. 8, ECF No. 245. Moreover, as to Arnold's testimony, Reliable argues that it shows Thai Care would have been treated exactly the same as any other distributor in the event of a hypothetical recall, and thus there can be no material differences in recall procedure between foreign and domestic products as a matter of law. *Id*. at. 9.

On the issue of recall, the Court finds that Plaintiffs' evidence, including the declarations of James Arnold and John Martin, do not raise an issue of material fact as to the differences between the domestic and Thai-bound PolyMem products. *See Anderson*, 477 U.S. at 252 (A mere scintilla of evidence to support a non-moving party's position is insufficient to defeat a summary judgment motion; there must be evidence on which the jury could reasonably find for the non-moving party). This Court agrees with the Magistrate Judge's finding that Plaintiffs have not presented any evidence that creates a triable issue of fact on the recall issue. Contrary to Plaintiffs' characterization of the evidence, the evidence does not illustrate any difference in a recall

procedure between the Thai-bound and domestic product. As such, the Court **OVERRULES** Plaintiffs' objection to the recall finding and **GRANTS** Reliable summary judgment on this issue.[3]

          *c.*       *Pricing Differences*

Finally, Plaintiffs argue that the Magistrate Judge improperly recommended that there is no evidence to support Plaintiffs' price disparity argument. Pls.' Obj. 13, ECF No. 241. Plaintiffs highlight that the price charged by RHS to its customers is included in the record. Therefore, based on the 80% price disparity in the record, Plaintiffs argue the Magistrate Judge made his recommendation on a factually inaccurate record.

Reliable argues that in the present case, if a price difference exists, it is caused by Ferris' choice to sell its PolyMem products overseas at a lower price. Defs.' Resp. Pls.' Obj. 11, ECF No. 245. Such price disparities do not constitute a material difference. To decide otherwise would allow Ferris to shield itself from competitive pricing under the guise of a Lanham Act claim. *Id*.

The Court finds evidence in the record that a significant price disparity exists between the Thai-bound and domestic Polymem product. In their objections, Plaintiffs emphasize that "App. 1040 shows that on March 13, 2014 RHS charged its customer Optimal, $110.49 per box of PolyMem 7042." Pls.' Obj. 12, ECF No. 241. Plaintiffs contrast this with same product sold through authorized domestic distributors for an average of $199.68 per case. *Id*. Plaintiffs rely on this information to argue that the Magistrate Judge's factual finding on price was erroneous. However, this Court notes that Plaintiffs did not cite this example in their summary judgment briefing so that the Magistrate Judge was notified of it. Additionally, Rule 56 does not impose

---

[3] "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact…that is not genuinely in dispute and treating the fact as established in the case." FED. R. CIV. P. 56(g). Similar to the warranty analysis, the Court finds that this finding would make no difference to any aggregation analysis because the lack of evidence means there was nothing to aggregate.

upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment, especially where, as here, the nonmoving party is well aware of the existence of such evidence. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992), *opinion corrected* (Mar. 26, 1992). "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.* Nevertheless, given this evidence and in the interests of justice, this Court considers it in the first instance and finds it raises a genuine issue of material fact on the issue of price. *See Societe Des Produits Nestle, S.A.*, 982 F.2d at 644 ("Afforded perfect information, consumers indifferent between the two [products] would presumably not be willing to pay more for one [product] than for the other."). Accordingly, the Court **SUSTAINS** Plaintiffs' objection to the price finding and **DENIES** Reliable summary judgment on this issue.[4]

### D. Labels

Reliable argues the Magistrate Judge correctly concluded that the labels applied by Ferris to Thai-bound PolyMem products: (i) were not required by law, (ii) did not help Ferris track products through its supply chain, and (iii) did not indicate any physical differences. Defs.' Obj.7, ECF No. 240. The Magistrate Judge also found that the removal of the labels did not damage the packaging or compromise the integrity of the PolyMem products. *See id.* Therefore, Reliable seeks an Order under Rule 56(g) to treat these facts as having been established. *Id.* Given that Plaintiffs did not respond to these arguments, the Court will treat them as established pursuant to Rule 56(g).

Also, Reliable argues there is no genuine issue of material fact concerning when Ferris first started its labeling practices. Defs.' Obj. 7, ECF No. 240. In Reliable's view, the summary judgment record established the earliest possible use of labels on PolyMem products with requisite

---

[4] "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact…that is not genuinely in dispute and treating the fact as established in the case." FED. R. CIV. P. 56(g).

certainty. Ferris' own email verifies that application of labels began in "June/July 2014." *Id.* Thus, Reliable urges that it should be granted partial summary judgment on Ferris' Lanham Act claims arising prior to June 1, 2014. *Id.* at 10.

Plaintiffs argue that the Magistrate Judge correctly concluded that the "timing and extent of the labeling is unclear," and thus Reliable had "not sufficiently proven in the summary judgment evidence . . . that Reliable should prevail as to Ferris' alleged damages sustained prior to June 1, 2014." Pls.' Resp. Defs.' Obj. 2., ECF No. 244. Plaintiffs emphasize that this determination should not be disturbed, because this timing is indeed a question of fact that will not require the submission of an inordinate amount of testimony or documentary evidence at trial, and this issue should be submitted to the jury. *Id.*

The Court finds that Defendants introduced summary judgment evidence that the labeling practice began in June/ July 2014 and Plaintiffs did not introduce any evidence to rebut Defendants claims. *See* Defs.' App. Supp. Mot. Summ. J. Ex. G (Polymem email), App. 112, ECF No. 160. Instead, Plaintiffs failed to respond altogether to Reliable's argument that partial summary judgment should be granted on all claims pre-dating June 1, 2014. Therefore, pursuant to Rule 56(g), the Court will treat the fact that labeling began no earlier than June 1, 2014 as established. Also, the Court **GRANTS** Reliable's motion for summary judgment on Ferris' Lanham Act claims arising prior to June 1, 2014.

**IV. CONCLUSION**

For the above-mentioned reasons, the Court finds Defendant's Motion for Summary Judgment (ECF No. 154) should be **GRANTED in part and DENIED in part**. Pursuant to Rule 56 (g), the following material facts are not genuinely in dispute and hereby established:

16

1. There is no material difference between the warranty and recall procedures associated with Ferris Mfg.Corp.'s domestic and Thai PolyMem products so as to support Ferris' Lanhman Act claims.

2. Ferris' labeling practice (i) was not required by law, (ii) did not help Ferris track products through its supply chain, and (iii) did not indicate any physical differences. Further, the removal of the labels did not damage the packaging or compromise the integrity of the PolyMem product.

3. The earliest Ferris began labeling was June 1, 2014.

Therefore, the court **GRANTS** summary judgment as to these claims as well as Ferris' Lanham Act claims arising prior to June 1, 2014.

The Court finds genuine issues of material fact exists concerning the material differences between the Thai-bound and domestic products regarding labeling and price. Therefore, the Court **DENIES** summary judgment on these issues and, as such, whether the first sale doctrine applies.

**SO ORDERED** on this **16th day** of **July, 2019.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE